In the Matter of the Estate of JOHN DE WITT, Deceased.

Surrogate's Court, Yates County, June 27, 1952.

*Domenick L. Gabrielli* for Gerald Griffiths, as coexecutor of John De Witt, deceased, petitioner.

*Lyman H. Smith* for Emma De Witt, individually, and another, respondents.

*James A. Townsend* for Dellazon Bennett and another, as coexecutors of John De Witt, deceased.

McCann, S. This is a discovery proceeding instituted by Gerald Griffiths, one of the coexecutors of the last will and testament of John De Witt, deceased, to discover certain property of said decedent. The proceedings substantially resolves itself around the balance of proceeds of a land contract originally made between the decedent and Emma De Witt, his wife, for the sale of a farm and vineyard property located on the west side of the east branch of Lake Keuka, in the town of Jerusalem, Yates County, New York, to one Ralph Beckhorn, the purchaser thereof. The proceedings further concern the ownership of a certain grape crop check in the approximate sum of $7,000 resulting from the labors of said Ralph Beckhorn. According to the terms of said contract the said Ralph Beckhorn was to be entitled to one half thereof and the other one half was to go to the decedent and his wife. The proceedings further involved a debt of $1,000 owed by said Ralph Beckhorn.

Upon the return date of the discovery proceedings it was stipulated in open court and the answer as filed by Emma De Witt admitted that the estate of John De Witt was entitled to one fourth of the grape crop check and that one half of the $1,000 loan made to Ralph Beckhorn belonged to the estate. These were determinations desired by the petitioner. It is the contention of the petitioner that any balance of installments due under the land contract with said Ralph Beckhorn belonged to the estate and Emma De Witt, that is, the estate was entitled to one half thereof and Emma De Witt the other one half.

The respondent, Emma De Witt, through her counsel, alleges that she is entitled to the whole thereof by reason of the fact that she is the surviving tenant by the entirety and entitled to

said premises, said premises having on or about the 9th day of November, 1945, been deeded to John De Witt and Emma De Witt, the respondent herein, as tenants by the entirety; that by reason of such tenancy, she, as the survivor, is entitled to the whole thereof, the interest of the decedent therein having been extinguished by his decease.

The petitioner bases his claim upon the " Doctrine of Equitable Conversion," claiming that upon the making of the land contract by the decedent and Emma De Witt to Ralph Beckhorn that their interest, by reason of said doctrine, became personal property and citing in support thereof the case of *Williams* v. *Haddock* (145 N. Y. 144) which in part says that as a general rule the owner of real estate, from the time of the execution by him of a valid contract for the sale thereof, is to be treated as the owner of the purchase money and the vendee as equitable owner of the land. In its opinion the Court of Appeals goes on to say (p. 151) : " It may be assumed that the rule does not obtain under circumstances which show clearly that the parties never intended that it should ".

The respondent cites as the case to substantiate their contention *Matter of McGuire* (251 App. Div. 337, affd. without opinion 277 N. Y. 527). The Appellate Division, Second Department, at page 338 has this to say: " Equitable conversion is not a fixed rule of law but a mere fiction of equity designed to effectuate the obvious intention of the parties and to promote justice. It rests ' on the presumed intention of the owner of the property and on the maxim that equity regards as done what ought to be done.' "

From a reading of both of these cases it is evident that whether or not equitable conversion takes place is a matter of the intention of a vendor.

The only evidence submitted to me from which any intention could be determined in the matter now before me was the deed from Delmar Perry to the De Witts as tenants by the entirety which is dated November 9, 1945, and the land contract between the De Witts and Ralph Beckhorn, which is also dated the 9th day of November, 1945.

In his brief the attorney for the petitioner calls this matter to my attention, stating that it is his belief " that the De Witts never moved on to the property, never lived on the property and that there was no intention by them to ever hold the property as such but entered into the contract agreement immediately."

The attorney for the other executors in his brief calls my attention to the fact " that the De Witts had title put in their names as tenants by the entirety and the same day drew a contract to Mr. Beckhorn," further claiming that " that indicates that they (the De Witts) intended to treat the proceeds to be realized upon the contract as the joint property of both."

The deed, being in the usual form, there is nothing therein out of the ordinary that would indicate the De Witts' intention. This compels me to examine the contract for an expression of the intention of the De Witts. In my search for an expression of such intention the contract is much more helpful. On the third sheet thereof I find these words: " The parties of the first part shall have a right to elect to declare this contract and agreement in default and shall have a right to retain any payments which shall have been made under this contract AS RENT for said premises, and then said contract shall cease and shall be null and void, and the party of the second part hereby agrees to remove from said premises within sixty days after said default " etc.

The contract further goes on to say: " It is further understood and agreed that the parties of the first part shall be under no obligation to return any payments made hereunder to the party of the the second part, and ALL PARTIES agree that in the event of default, that the payments so made SHALL BE RENT."

The contract continues: " That the party of the second part shall be treated and considered, and BE IN FACT, TENANTS HOLDING OVER AFTER THE EXPIRATION OF HIS LEASE;" etc.

The contract contains a further clause: " It is hereby agreed and understood that this contract is not transferrable nor assignable without the written consent of the parties of the first part, and it is hereby agreed that the stipulation aforesaid shall apply to and bind the heirs, executors and administrators and assigns of the respective parties."

The expression " and ALL PARTIES agree that in the event of default, that the payments so made shall be RENT " indicates to me an intention on the part of the De Witts that equitable conversion should not take place.

An order in accordance with this decision may be submitted upon notice.